UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUNILDA LARA,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>        Defendant. | No. 2:16-cv-0034 DB<br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff's motion argues that the Administrative Law Judge's step two finding, treatment of the medical opinion evidence, treatment of plaintiff's subjective testimony, and treatment of Social Security Ruling 00-4p constituted error. For the reasons explained below, plaintiff's motion is granted in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings.

////

////

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 8.)

1

PROCEDURAL BACKGROUND

In November of 2011, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on August 2, 2010.[2] (Transcript ("Tr.") at 20, 193-206.) Plaintiff's applications were denied initially, (id. at 130-33), and upon reconsideration. (Id. at 136-40.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on October 15, 2013. (Id. at 46-100.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 46-47.) In a decision issued on February 28, 2014, the ALJ found that plaintiff was not disabled. (Id. at 30.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since July 28, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: obesity, diabetes, degenerative joint disease, and adjustment disorder with depression and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following exceptions: The claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. She can also occasionally balance, stoop, kneel, crouch, or crawl; and reach, handle, finger, or feel with her left upper extremity. The claimant requires the option to sit or stand, changing positions at her workstation two to three times per hour. She can perform simple, repetitive tasks. Further, she can occasionally interact with the public, and frequently interact with supervisors and co-workers.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

---

[2] Plaintiff later amended the alleged onset date to July 28, 2010. (Tr. at 362.)

2

>    7. The claimant was born on October 6, 1967 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).
>
>    8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
>    9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>    10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
>    11. The claimant has not been under a disability, as defined in the Social Security Act, from July 28, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 22-30.)

On June 19, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's February 28, 2014 decision. (Id. at 4-6.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on January 6, 2016. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d

1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following four principal claims: (1) the ALJ erred at step two of the sequential evaluation; (2) the ALJ's treatment of the medical opinion evidence constituted error; (3) the ALJ's treatment of plaintiff's subjective testimony constituted error; and (4) the ALJ violated Social Security Ruling 00-4p. (Pl.'s MSJ (ECF No. 16) at 22-29.[3])

////

////

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

I. **Step Two Error**

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also

Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal. Feb.11, 2008) (describing claimant's burden at step two as "low").

Here, plaintiff argues that the ALJ erred at step two of the sequential evaluation by finding that plaintiff's fibromyalgia was not a severe impairment. (Pl.'s MSJ (ECF No. 16) at 22-23.) The ALJ's decision discussed plaintiff's fibromyalgia but found that there was "insufficient evidence demonstrating" that it was a severe impairment under Social Security Ruling ("SSR") 12-2p.[4] (Tr. at 23.)

SSR 12-p provides that a claimant can establish fibromyalgia as a medically determinable impairment if a doctor diagnosed fibromyalgia and the claimant meets either the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria for fibromyalgia. See SSR 12-2p, 2012 WL 3104869, at *2-3. Although the ALJ's decision acknowledged the 1990 ACR Criteria for fibromyalgia, the ALJ's decision did not mention the 2010 ACR Preliminary Diagnostic Criteria for fibromyalgia.[5] (Tr. at 23.)

Nor did the ALJ discuss how the medical evidence of record related to each set of criteria. Instead, the ALJ stated that "a thorough review of the record does not show any such diagnosis" of fibromyalgia. (Id. at 23.) The ALJ went on to state that although treatment records from Dr. Shawn Goodall "noted that the patient inquired about fibromyalgia," and that Dr. Goodall found that plaintiff had "sites all over, bilaterally as well as symmetrically superior/inferiorly," Dr.

---

[4] "While lacking the force of law, these rulings constitute the Social Security Administration's official interpretations of the statute it administers and of its own regulations." Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

[5] "Under both sets of diagnostic criteria, a finding that a claimant has a medically determinable impairment of fibromyalgia requires a history of widespread pain in all quadrants of the body and evidence that other disorders associated with symptoms or signs that are the similar to those resulting from fibromyalgia have been ruled out. The 1990 ACR also requires a finding of at least 11 of 18 tender points above and below the waist bilaterally. Under the 2010 ACR, evidence of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions such as fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome" is required. Sandoval v. Colvin, Case No. 5:15-CV-1994 GJS, 2016 WL 4950774, at *2 (C.D. Cal. Sept. 15, 2016) (citations, quotations, and alterations omitted).

Goodall "noted that it is very difficult to have a confirmatory diagnosis of fibromyalgia and that he is not an expert in that field." (Id.) Accordingly, the ALJ concluded that:

> [s]ubjective complaints alone, without objective findings during the prescribed disability period, are not sufficient to justify a finding of a medically determinable impairment, much less a severe impairment.

(Id.)

However, both Dr. Goodall and Dr. Michael Staszel diagnosed plaintiff with fibromyalgia. (Id. at 872, 876-78, 925.) Moreover, "[f]ibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004). Fibromyalgia's "symptoms are entirely subjective. There are no laboratory tests for [its] presence or severity." Jordan v. Northup Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004) overruled on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc); see also Welch v. UNUM Life Ins. Co. of Am., 382 F.3d 1078, 1087 (10th Cir. 2004) (fibromyalgia presents conundrum for insurers and courts because no objective test exists for proving the disease, its cause or causes are unknown, and its symptoms are entirely subjective).

In this regard, "it is error for an ALJ to require objective evidence for a disease that eludes such measurement." Sharpe v. Colvin, No. CV 13-1557 SS, 2013 WL 6483069, at *4 (C.D. Cal. Dec. 10, 2013) (reversing an ALJ's conclusion that the plaintiff did not suffer from the severe medically determinable impairment of fibromyalgia); see also Benecke, 379 F.3d at 594 ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement."); Tully v. Colvin, 943 F .Supp.2d 1157, 1167-68 (E.D. Wash. 2013) ("The lack of objective clinical findings in this case of fibromyalgia is insufficient to support the ALJ's rejection of Dr. Stevenson's opinions regarding Plaintiff's functional capacity."); Llamas v. Astrue, No. 1:09-cv-1503 GSA, 2010 WL 5313759, at *9 (E.D. Cal. Dec. 20, 2010) ("Courts have found it error for an ALJ to discount a treating physician's opinion as to resulting limitations due to a lack of objective evidence for fibromyalgia.").

Nor can the court find the ALJ's error harmless. An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless if "there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion."). An ALJ's failure to consider an impairment "severe" at step two is harmless if the ALJ considers all impairments – regardless of severity – in the subsequent steps of the sequential analysis. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding step two error harmless as the ALJ specifically discussed plaintiff's bursitis and its effects when identifying the basis for limitations in plaintiff's RFC). Here, the ALJ did not discuss fibromyalgia in the subsequent steps of the sequential evaluation.

Accordingly, the court finds that plaintiff is entitled to summary judgment on the claim that the ALJ erred at step two of the sequential evaluation by finding that plaintiff's fibromyalgia was not a severe impairment.

## II.     Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen, 80 F.3d at 1285; Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion

1  of either an examining physician or a treating physician." (Id. at 831.) Finally, although a
2  treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not
3  accept the opinion of any physician, including a treating physician, if that opinion is brief,
4  conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661,
5  671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.
6  2009)).

   Here, plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Michael Staszel,
plaintiff's treating physician. (Pl.'s MSJ (ECF No. 16) at 23-25.) In this regard, on November 4,
2013, Dr. Staszel completed a "Medical Opinion: Physical Ability To Participate in Work Related
Activities" form. (Tr. at 925.) The ALJ's decision discussed Dr. Staszel's opinion, stating:

> Dr. Staszel opined that the claimant could lift and carry less than 10 pounds; could sit, stand, and walk for less than two hours in an eight hour workday; would require unscheduled breaks; and would need to change positions at will. I give this opinion little weight due to its inconsistency with the medical records of evidence, including the treating clinics own records. Further, Dr. Staszel's treating relationship with the claimant may cause him to be overly sympathetic to the claimant's subjective complaints.

(Id. at 28.)

   However,

> [t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

   Moreover, the ALJ's unsupported assertion that "Dr. Staszel's treating relationship with the claimant may cause him to be overly sympathetic to the claimant's subjective complaints,"

9

contravenes both well-established Ninth Circuit authority and the Code of Federal Regulations. See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits."); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987) ("The rationale behind affording the treating physician's opinion greater weight is that he is employed to cure and has a greater opportunity to know and observe the patient as an individual."); 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion offered by Dr. Staszel constituted error.[6]

**III.    Subjective Testimony**

Plaintiff argues that the ALJ's treatment of plaintiff's testimony constituted error.  (Pl.'s MSJ (ECF No. 16) at 26-27.)  The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.

---

[6] Plaintiff also argues that the ALJ rejected the medical opinions of "Drs. Birk and Pierce." (Pl.'s MSJ (ECF No. 16) at 24.) However, what plaintiff characterizes as medical opinions are instead medical records. "'In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work.'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).

10

> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina, 674 F.3d at 1112.

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (Tr. at 27.) In this regard, the ALJ found that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (Id. at 26.)

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of" the impairment. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). Nonetheless, lack of medical evidence is a relevant factor for the ALJ to

11

consider in her credibility analysis.  (Id. at 681.)

Moreover, the ALJ did not reject plaintiff's testimony based solely on a lack of medical evidence.  The ALJ also rejected plaintiff's testimony because plaintiff "provided inconsistent reports concerning her mental health conditions."  (Tr. at 27.)  In this regard, plaintiff testified at the October 15, 2013 administrative hearing that she suffers a panic attack "two or three times a week."  (Id. at 70.)  However, at her January 30, 2013 "comprehensive psychiatric evaluation," plaintiff stated that she was "not having panic attacks . . . ."  (Id. at 815.)  In evaluating plaintiff's credibility, an ALJ may consider "prior inconsistent statements concerning the symptoms . . . ." Smolen, 80 F.3d at 1284.

Accordingly, the court finds that plaintiff is not entitled to summary judgment with respect to the claim that the ALJ's treatment of plaintiff's subjective testimony constituted error.

**IV.    SSR 00-4p**

> SSR 00-4p unambiguously provides that "[w]hen a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [Dictionary of Occupational Titles ]."  SSR 00-4p further provides that the adjudicator "will ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict.

Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (alterations in original).

Here, the ALJ instructed the vocational expert to inform the ALJ of any conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").  (Tr. at 92.)  Thereafter, the vocational expert testified that a person with plaintiff's residual functional capacity could perform the job of call-out operator, DOT 237.367-014.  (Tr. at 95.)

Plaintiff's residual functional capacity, however, was limited to "simple, repetitive tasks." (Id. at 25.)  The job of call-out operator requires the claimant to have a Level 3 reasoning level. See Siqueiros v. Colvin, No. EDCV 12-1790 AN, 2013 WL 6732885, at *2 (C.D. Cal. Dec. 19, 2013); see also DOT 237.367-014.  "The weight of authority in this circuit, including in this district, has concluded that a limitation to simple, repetitive tasks is inconsistent with the DOT's description of jobs requiring GED reasoning Level 3."  Celedon v. Colvin, No. 1:13-cv-0449

SMS, 2014 WL 4494507, at *9 (E.D. Cal. Sept. 11, 2014); see also Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (limitation to simple and routine work "seems inconsistent with the demands of level-three reasoning"); Tich Pham v. Astrue, 695 F.Supp.2d 1027, n.7 1032 (C.D. Cal. 2010) (level 3 reasoning "greater than the reasoning required for simple repetitive tasks"); Gottschalk v. Colvin, Civil No. 6:13-cv-0125-JE, 2014 WL 1745000, at *5 (D. Or. May 1, 2014) (majority of district courts within the Ninth Circuit have concluded that there is a conflict between limitation to simple, routine, repetitive work and level 3 reasoning); Torrez v. Astrue, No. 1:09-0626-JLT, 2010 WL 2555847, at *9 (E.D. Cal. June 21, 2010) ("In light of the weight of authority in this circuit, the Court concludes that the DOT precludes a person restricted to simple, repetitive tasks, from performing work . . . that requires level three reasoning.").

However, the vocational expert also testified that a person with plaintiff's residual functional capacity could perform the jobs of addresser, DOT 209.587-010, and weave-defect-charting clerk, DOT 221.587-042. (Tr. at 95.) Plaintiff argues that, contrary to the vocational expert's testimony, those jobs are inconsistent with plaintiff's residual functional capacity. In this regard, plaintiff argues that plaintiff is limited to only occasional reaching, handling, fingering, and feeling with the left upper extremity, while the jobs identified require the ability to constantly or frequently reach, handle, and finger according to the DOT. (Pl.'s MSJ (ECF No. 16) at 27.)

"For a difference between an expert's testimony and the Dictionary's listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the Dictionary's listing of job requirements that are essential, integral, or expected." Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016). In Gutierrez, the plaintiff could not lift more than five pounds with her right arm or lift that arm above her shoulder. (Id. at 807.) A vocational expert testified that, given those limitations, the plaintiff could perform the job of cashier. (Id.)

On appeal, the plaintiff argued that the DOT specified that cashiers must engage in frequent reaching. (Id.) The Ninth Circuit held:

> Given how uncommon it is for most cashiers to have to reach overhead, we conclude that there was no apparent or obvious conflict between the expert's testimony and the Dictionary. The

13

> requirement for an ALJ to ask follow up questions is fact-dependent. While we acknowledge that there may be exceptional circumstances where cashiers have to reach overhead, this case doesn't present any. Responding to the ALJ's hypothetical question that specifically accounted for Ms. Gutierrez's limitations, the expert eliminated all jobs that would have required weight bearing and overhead reaching with her right arm, identifying a single job she could perform despite her limitations. The ALJ was entitled to rely on the expert's "experience in job placement" to account for "a particular job's requirements," SSR 00-4P, 2000 WL 1898704, at *2, and correctly did so here.

Id. at 808-09.

Here, the ALJ's hypothetical specifically accounted for plaintiff's limitation of "only occasionally reach, handle, finger or feel with the left upper extremity." (Tr. at 94.) The vocational expert found that, in light of those limitations, plaintiff could perform the jobs of addresser and weave-defect-charting clerk. (Id. at 95.) As the court understands those jobs, there appears to be no apparent or obvious conflict between the vocational expert's testimony and the DOT.[7]

Moreover, the vocational expert testified that there are a total of 26,000 of these jobs in California. (Tr. at 30.) That number of jobs would provide substantial evidence in the record to support the ALJ's finding that there were jobs that existed in significant numbers that the plaintiff could have performed. See Gutierrez v. Commissioner of Social Sec., 740 F.3d 519, 528 (9th Cir. 2014) ("we conclude that a sampling of what constitutes 'significant work' reveals that the ALJ's finding of 2,500 jobs in California satisfies the statutory standard"). Therefore, the error with respect to the job of call-out operator would be harmless. See Phillips v. Colvin, 61 F.Supp.3d 925, 935 (N.D. Cal. 2014).

Nonetheless, because the resolution of this issue is not dispositive, and this matter must be remanded for further proceeding regardless, the court declines to reach this argument. On

---

[7] In this regard, a weave-defect-charting clerk "[p]lots weaving defects on graph charts to depict frequency and types of defects charged to each textile weaver: Shades chart boxes of bar graph to plot weaving defects for each weaver by type and workshift, using inspection reports and colored pencils. Posts charts in weaving room for weavers' reference. Copies data, such as frequency and types of defects, loom numbers, and cloth style from inspection reports onto defect-report form for quality control use." DOT 221.587-042. An addresser "[a]ddresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing." DOT 209.587-010.

remand, however, the ALJ shall ensure that any obvious and apparent conflicts between the vocational expert's testimony and the DOT are resolved.

## CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the court cannot find that further administrative proceedings would serve no useful purpose.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 17) is granted in part and denied in part;

3. The Commissioner's decision is reversed;

////

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: March 28, 2017

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\lara0034.ord